J-A30015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW DOUGAN | : | |
| | : | |
| Appellant | : | No. 1687 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 3, 2024
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000613-2021

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED APRIL 28, 2026**

Andrew Dougan appeals from the judgment of sentence, entered in the Court of Common Pleas of Pike County, following his convictions of seven counts of aggravated indecent assault,[1] six counts of statutory sexual assault,[2] three counts of involuntary deviate sexual intercourse (IDSI),[3] two counts each of unlawful contact or communication with a minor,[4] sexual abuse of

---

[1] 18 Pa.C.S.A. § 3125.

[2] *Id.* at § 3122.1.

[3] *Id.* § 3123.

[4] *Id.* at § 6318.

children,[5] and corruption of minors,[6] and one count of endangering the welfare of children.[7]  After review, we grant the Commonwealth's motion to strike Dougan's reply brief and affirm Dougan's judgment of sentence.

This case arises from Dougan's sexual abuse of a minor, B.C., when B.C. was between the ages of thirteen years old to fifteen years old.  B.C. explained that the sexual acts took place at her grandparents' Pike County house, where Dougan also lived.

The Commonwealth filed a criminal complaint against Dougan on November 24, 2021, and, on December 7, 2021, Dougan had his preliminary hearing.  On February 17, 2022, while serving a sentence for a prior DUI conviction, Dougan appeared *pro se* for his arraignment, and the matter was scheduled for the May 2022 criminal trial term.  Dougan continued *pro se* for the duration of his case.

From February 24, 2022 to March 4, 2022, the parties filed a multitude of pre-trial motions.  On March 10, 2022, Dougan filed a motion for extension of time to file an omnibus pre-trial motion, which the trial court granted on March 16, 2022, extending the deadline for filing by 30 days.  Dougan filed his omnibus pre-trial motion on April 18, 2022, requesting, in part, additional discovery from the Commonwealth, including the "full extraction of [B.C.'s

_____

[5] *Id.* at § 6312.

[6] *Id.* at § 6310.

[7] *Id.* at § 4304.

cellphone, a] SM-G 900V Samsung Galaxy S 5." ***See*** Omnibus Pre-Trial Motion, 4/18/22, at 2. On April 25, 2022, the trial court ordered a hearing on Dougan's pre-trial motion, to be held on June 30, 2022. Thereafter, on May 2, 2022, the trial court continued the trial to the July 2022 trial term "due to [Dougan's] outstanding [] [p]re-[t]rial [m]otions." Order, 5/2/22. Again, on June 30, 2022, due to the outstanding nature of Dougan's many motions, the trial court continued the trial to the September 2022 trial term.

With Dougan's omnibus pre-trial motion still outstanding, on August 18, 2022, the Commonwealth filed a motion for protective order on certain discovery material recovered from B.C.'s cellphone. On August 26, 2022, the trial court scheduled a hearing for outstanding motions for September 29, 2022, and once again continued trial due to Dougan's outstanding pre-trial motion until the November 2022 trial term. On September 29, 2022, Dougan opposed the Commonwealth's motion for a protective order or, in the alternative, asked the trial court to conduct an in-camera inspection of the contested discovery. Following the hearing on the Commonwealth's motion for a protective order and Dougan's motion to oppose same, the trial court continued trial on October 28, 2022 to the January 2023—attributing this delay to Dougan.

On November 23, 2022, the trial court granted in part and denied in part the Commonwealth's motion for a protective order. The Commonwealth promptly filed a motion for reconsideration and an in-camera hearing to determine whether the materials downloaded from B.C.'s phone would be

prohibited from Dougan's possession in a county prison due to their obscene nature. *See* Commonwealth's Motion for Reconsideration, 11/29/22, at 3; *see also* 18 Pa. C.S.A. § 5903(a)(7) (prohibiting obscene and other sexual materials and performances in state correctional institutions). On December 15, 2022 and December 29, 2022, the trial court denied Dougan's motions to compel, filed on December 7, 2022 and March 3, 2022, and Dougan's omnibus pre-trial motion, respectively. On January 3, 2023, Dougan filed a request for reconsideration of the denial of motion to compel.

On January 4, 2023, due to both Dougan's and the Commonwealth's outstanding reconsideration motions, the trial court continued the trial to the March 2023 criminal term of court. On March 2, 2023, the trial court ordered a hearing for March 30, 2023, and, on March 3, 2023, continued the trial to May 2023. Following the hearing, the trial court did not enter an order on either motion and, on April 28, 2023, continued the trial to July 2023. On June 30, 2023, the trial court entered an order on both motions for reconsideration, granting the Commonwealth's motion for an in-camera hearing and denying Dougan's request for reconsideration, and rescheduling the case to the September 2023 criminal term. On August 29, 2023, the trial court continued the case until November 2023 due to its pending consideration of the Commonwealth's sealed exhibit of the extractions from B.C.'s phone.

On October 23, 2023, upon completion of its in-camera review of B.C.'s phone records, the trial court ordered an additional hearing, to be held on October 30, 2023, for Dougan's discovery request for the cellphone data and

the Commonwealth's motion to preclude or limit the production of the cell phone data. Ultimately, on November 2, 2023, the trial court ordered the Commonwealth to provide limited discovery to Dougan and continued the case until January 2024 to facilitate the production and inspection of discovery. Except for the August 29, 2023 order, which did not attribute the delay to any party, and the January 4, 2023 order which mentions both Dougan's and the Commonwealth's pending motions, the trial court attributed all these delays to Dougan.

On January 15, 2024, the day before jury selection was to begin, Dougan filed a Pa.R.Crim.P. 600 motion to dismiss.[8] Following a hearing on January 22, 2024, the trial court denied Dougan's Rule 600 motion.

_____

[8] A Rule 600 motion must be filed before trial. **See** Pa.R.Crim.P. 600(D)(1). For the purpose of Rule 600, "[a] trial commences when the trial judge determines that the parties are present and directs them to proceed to voir dire or to opening argument, or to the hearing of any motions that had been reserved for the time of trial, or to the taking of testimony, or to some other such first step in the trial." Pa.R.Crim.P. 600 cmt., citing **Commonwealth v. Kluska**, 399 A.2d 681 (Pa. 1979); **Commonwealth v. Lamonna**, 373 A.2d 1355 (Pa. 1977). Here, voir dire occurred on January 16, 2024, and is considered the start of Dougan's trial. Dougan's Rule 600 motion, which he hand-dated January 15, 2024, is marked as filed with the trial court on January 19, 2024. Prior to voir dire, Dougan stated that he had motions, including a Rule 600 motion, currently in the mail, but the trial court may not have received them yet. **See** N.T. Jury Trial, 1/16/24, at 12 (Dougan presenting copies of motions to trial court and Commonwealth).

As a *pro se* and incarcerated litigant, Dougan's filing "is deemed filed as of the date of the prison postmark or the date the filing was delivered to the prison authorities for purposes of mailing[,] as documented by a properly executed prisoner cash slip or other reasonably verifiable evidence." Pa.R.A.P. 121(f). When the filing is received by the relevant court only a few days after the
*(Footnote Continued Next Page)*

A jury trial commenced on January 23, 2024. On January 24, 2024, the jury returned guilty verdicts as to all counts of the amended information.[9] The trial court ordered Dougan to be assessed by the Pennsylvania Sexual Offender Assessment Board (SOAB), as well as the preparation of a pre-sentence investigation report.

On May 3, 2024, Dougan was sentenced to an aggregate term of incarceration of 58½ to 155 years' incarceration, consecutive to the sentence he was serving at the time of trial, plus three consecutive years of probation supervision. On May 14, 2024, the trial court filed an amended sentencing order, which rectified a clerical error regarding the names of the offenses charged in Counts 12 through 18. On May 15, 2024, Dougan filed a *pro se* post-sentence motion[10] and, on May 16, 2024, filed several other motions,

_____

expiration of the filing period, this Court assumes, without remanding for an evidentiary hearing, that the *pro se* filing must have been submitted to prison authorities for mailing by the last day of the filing period. **See Commonwealth v. Betts**, 240 A.3d 616, 619 n.5 (Pa. Super. 2020) ("Given the inherent delays associated with mail delivery and the totality of the circumstances, we conclude that Appellant's *pro se* response[, which was received by the lower court two days after the filing period ended,] must have been deposited for mailing no later than [the last day of the filing period]."). As such, we consider Dougan's Rule 600 motion timely filed prior to the start of trial.

[9] Dougan was originally charged with seven counts of IDSI. On January 24, 2024, prior to the jury verdict, the Commonwealth filed an amended complaint withdrawing four counts of IDSI. **See** Trial Court Opinion, 8/19/24, at 1.

[10] While Dougan's post-sentence motion was hand-dated for May 10, 2024 by Dougan, the trial court considered the post-sentence motion timely filed as to the May 14, 2024 amended sentence as it was officially filed with the court on
*(Footnote Continued Next Page)*

including a motion seeking leave to file a supplemental post-sentence motion. On May 23, 2024, the trial court denied all of Dougan's motions.

Dougan filed this timely appeal. Both Dougan and the trial court complied with the requirements of Pa.R.A.P. 1925. Dougan raises the following claims for our review:

> 1. Did the trial [c]ourt err when it denied [Dougan]'s Rule 600 [m]otion to [d]ismiss where [Dougan]'s trial began nearly eight hundred days after the complaint was filed, which included a period of four hundred days in which the Commonwealth failed to take any action to have its own motions decided?
>
> 2. Did the trial [c]ourt err and violate [Dougan]'s right to [d]ue [p]rocess under the Fourteenth Amendment of the United States Constitution when it thwarted [Dougan]'s access to the courts[,] by allowing officials at the Pike County Correctional Facility [(PCCF)] to seize [Dougan]'s legal materials without ever returning them[,] where [Dougan] represented himself *pro se* for the entire duration of the trial, sentencing, and post-sentencing proceedings?

Appellant's Brief, at 3.

_____

May 15, 2024. Even if Dougan's post-sentence motion was moot because Dougan was appealing the original sentencing order, we still consider his notice of appeal as timely. The notice was dated by Dougan on June 13, 2024, which was within 30 days of the entry of the corrected sentencing order, and the appeal was filed with the prothonotary on June 17, 2024. **See** Pa.R.A.P. 903(a); **see also Commonwealth v. Patterson**, 931 A.2d 710, 714 (Pa. Super. 2007) ("Although the record is bereft of the envelope in which the notice of appeal was mailed, and thus lacks a postmark definitively noting the date of mailing, we note that [ ] in order for the trial court to have received the notice of appeal by [three days after the expiration of the appeal period], it is likely that Appellant mailed his notice of appeal on or before [the last day of the appeal period]. Accordingly, we decline to quash the appeal for untimeliness.").

In his first issue, Dougan argues the trial court abused its discretion in denying his pre-trial motion to dismiss pursuant to Rule 600. *Id.* at 10-11. We review a trial court's Rule 600 ruling for an abuse of discretion, which "is not merely an error of judgment," but rather exists where the evidence of record establishes that "in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." *Commonwealth v. Dunmore*, 324 A.3d 1, 5 (Pa. Super. 2024) (citation omitted). Further, we must view the facts in the light most favorable to the prevailing party and limit our scope of review to "the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court." *Id.* (brackets and citation omitted).

Generally, under Rule 600, the Commonwealth must bring a defendant to trial within 365 days of filing the criminal complaint. *See* Pa.R.Crim.P. 600(A)(2)(a).

> In a Rule 600 analysis, the "mechanical run date" is 365 days after the complaint was filed. The "adjusted run date" is then calculated by adding any time that is "excluded from the computation" under Rule 600(C)(1). If a defendant is not brought to trial by the adjusted run date, the case is dismissed.

*Commonwealth v. Malone*, 294 A.3d 1247, 1249 (Pa. Super. 2023) (citations omitted). In determining the adjusted run date, Rule 600 further explains:

> periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

- 8 -

Pa.R.Crim.P. 600(C)(1); **see also** Pa.R.Crim.P. 600, cmt. ("If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded.") (citations omitted).

Our Supreme Court recently explained that the first sentence of Rule 600(C)(1) provides "the general rule" and establishes "two requirements that must be met for delay to count toward the 365-day deadline: (1) the Commonwealth caused the delay and (2) the Commonwealth failed to exercise due diligence." **Commonwealth v. Lear**, 325 A.3d 552, 560 (Pa. 2024) (citations and internal quotation marks omitted). The **Lear** Court clarified that "the causation analysis precedes the due diligence inquiry, and it is only when the Commonwealth both caused the delay **and** lacked due diligence that the delay is properly included in the Rule 600 calculation." **Id.** at 560 n.7 (emphasis added).

In order to avail itself of an exclusion under Rule 600, it is the Commonwealth's burden to demonstrate due diligence by a preponderance of the evidence. **See Commonwealth v. Womack**, 315 A.3d 1229, 1239 (Pa. 2024). "Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." **Commonwealth v. Selenski**, 994 A.2d 1083, 1089 (Pa. 2010) (citation omitted).

Addressing the second sentence of Rule 600(C)(1), the **Lear** Court explained that "'any other periods of delay—meaning any periods of delay not caused by the Commonwealth or not resulting from the Commonwealth's lack

of due diligence—are 'excludable' and are removed from the computation of the Rule 600 deadline." *Lear*, 325 A.3d at 560 (brackets and citation omitted). Excludable time includes, but is not limited to, delays caused by: (1) the suspension of Rule 600 during the COVID-19 pandemic, without regard to the Commonwealth's diligence, *see Commonwealth v. Malone*, 294 A.3d 1247, 1251 (Pa. Super. 2023); (2) defense unavailability or a continuance request; (3) the adjudication of a defendant's pretrial motion; (4) court congestion, judicial delay, or court transfer; and (5) the failure to bring a defendant to court from state custody. *See Commonwealth v. Robinson*, 339 A.3d 1030, 1036 (Pa. Super. 2025).

Further, when a defendant files a pre-trial motion, the pendency of the motion does not automatically result in the exclusion of time for Rule 600. *See Commonwealth v. Wallace*, 804 A.2d 675, 679 (Pa. Super. 2002).[11] Instead, the time period during which a defendant's pre-trial motion is pending is only excluded where the pre-trial motion causes a delay in the commencement of the trial and "the Commonwealth . . . demonstrate[s], by

---

[11] We note that the *Wallace* Court ruled on the defendant's motion under the statute that preceded Rule 600. *See Wallace*, 804 A.2d at 678-79 (applying Rule 1100 for speedy trial analysis). However, this Court has continued to rely on *Wallace* when addressing Rule 600 claims. *See, e.g.*, *Commonwealth v. Andrews*, 213 A.3d 1004, 1012 n.3 (Pa. Super. 2019) (stating that this Court continues to apply cases like *Wallace* that were decided under Rule 1100); *Commonwealth v. Amendola*, 2025 WL 48195, at *3 (Pa. Super. filed Jan. 8, 2025) (unpublished memorandum decision). *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished memorandum decisions of this Court filed after May 1, 2019, for persuasive value).

a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pre[-]trial motion." ***See id.***

Dougan contends that the Commonwealth did not act with due diligence to bring his case to trial because it failed to inform the trial court of any impending expiration of Rule 600 or attempt to request trial at the "earliest possible date." Appellant's Brief, at 11-12, 15. Specifically, Dougan points to the period of time between August 18, 2022 to November 2, 2023 (amounting to 442 days) as attributable to the Commonwealth and not excludable because the delay was a result of the Commonwealth filing three motions, two of which were after the mechanical run date, and its lack of due diligence, resulting in the trial taking place outside of the 365-day timeframe. ***Id.*** at 12.

In response, the Commonwealth argues that the trial court properly attributed the period between May 2, 2022 and June 30, 2023 (amounting to 424 days) to Dougan and, therefore, Dougan was brought to trial within 365 days. ***See*** Commonwealth's Brief, at 24.

Regarding its denial of Dougan's motion to dismiss, the trial court found:

> The record [] shows that [Dougan]'s trial was initially scheduled for the May 2022 term of court and was continued ten (10) times[] before taking place during the January 2024 term. On each occasion where [Dougan]'s trial was continued, the trial court and/or the record clearly indicate the reason for the continuance. Following a thorough review of the record in this case, we cannot discern any instance where delay in [Dougan]'s trial was caused by the Commonwealth's failure to exercise due diligence. Assuming[,] *arguendo*, the delay caused by the Commonwealth's outstanding [m]otion noted in our August 29, 2023 [o]rder was included in the computation, [Dougan]'s trial commenced well within the 365-day period required by Rule 600.

Since delays in [Dougan]'s trial were not attributable to the Commonwealth, and[, omitting excludable time,] the trial took place within 365 days of the filing of the criminal complaint against him, we maintain that the trial court neither committed an error of law, nor abused its discretion in denying [Dougan]'s many requests for dismissal pursuant to Rule 600.

Trial Court Opinion, 8/19/24, at 4-5 (footnote omitted).

In this case, the Commonwealth filed charges against Dougan on November 24, 2021. Thus, the mechanical run date for Rule 600 purposes was November 24, 2022. Dougan's trial began on January 16, 2024, 419 days beyond the initial mechanical run date. As Dougan is only challenging the period from August 18, 2022 to November 2, 2023, our analysis focuses on that period. However, we briefly note that, prior to August 18, 2022, the trial court found 108 days of excludable delay.[12] Accordingly, the relevant focus is on the remaining 311 days and whether they are considered excludable time.

Upon our review of the record, we conclude that the trial court did not abuse its discretion in denying Dougan's Rule 600 motion. As noted above, our standard of review requires us to examine the evidence of record in the

_____

[12] The trial court continued the trial on both May 2, 2022 and June 30, 2022, "due to [Dougan's] outstanding [] [p]re-[t]rial [m]otions." Order, 5/2/22; *see also* N.T. Motion Hearing, 5/2/22, at 5 (trial court explaining, irrespective of making decision on portion of Commonwealth's motion, the case "would be moved to the July 2022 Term of Court because [the trial court would] not be able to resolve [Dougan's] defense [m]otions before that date"); *id.* at 3 (Dougan explaining he was not prepared for trial without certain evidence sought by motions); *see also* N.T. Motion Hearing 6/30/22, at 19 (trial court explaining it would "take all of [Dougan]'s [m]otions under advisement for a decision" as well as look into Dougan's emergency motion made on February 28, 2022). Therefore, the delay was not caused by the Commonwealth, and this period of time resulted in 107 days excluded from the mechanical run time. *See Lear*, *supra*.

light most favorable to the prevailing party, here the Commonwealth. **See Dunmore**, 324 A.3d at 5. The Commonwealth's burden at a Rule 600 hearing is to prove due diligence by a preponderance of the evidence. **See Womack**, 315 A.3d at 1239. While the record of the Rule 600 motion hearing is sparse, instantly the Commonwealth asked the court to take judicial notice of the docket in this case, which reveals that the Commonwealth sought no delay of trial from the preliminary hearing onward and filed this case for trial at the trial listing for May 2022 to January 2024. **See** N.T. Rule 600 Hearing, 1/22/24, at 19. The trial court determined that Dougan was the cause of nearly all delays, amounting to 376 days of excludable time between August 18, 2022 to August 29, 2023, and, under **Lear**, if the Commonwealth is not the cause of the delay, our analysis ends there and we need not assess whether the Commonwealth acted with due diligence.

Nonetheless, the record supports the trial court's finding that the Commonwealth acted with due diligence throughout the life of this case. Since Dougan filed, as part of his April 18, 2022 omnibus pretrial motion, a motion to compel specific discovery, and the Commonwealth was duly diligent in opposing the motion by filing the protective order of that same discovery, the trial court did not err in finding the delay from these motions attributable to Dougan. **See Wallace**, **supra**. Furthermore, to the extent that Dougan argues a lack of due diligence due to Commonwealth's failure to notify the trial court of the impending or expired Rule 600 runtime, this Court has not required the Commonwealth to notify a "court of an imminent run-date

violation [as] a necessary condition to due diligence." **Commonwealth v. Robbins**, 900 A.2d 413, 417 (Pa. Super. 2006). While "nevertheless, it may 'factor' into the due diligence analysis," **id.**, "[d]ue diligence must be judged on what was done by the authorities, not on what was 'not done.'" **Commonwealth v. Preston**, 904 A.2d 1, 12 (Pa. Super. 2006) (internal citations omitted). Additionally, Dougan's claim that the Commonwealth exhibited a lack of due diligence by failing to request the earliest possible date for each trial listing is without merit, as each rescheduled trial listing was scheduled for the next possible criminal term, pursuant to Pike County's criminal trial schedule. **See** N.T. Rule 600 Motion Hearing, 1/22/24, at 19; **see also Commonwealth v. Aaron**, 804 A.2d 39, 43-44 (Pa. Super. 2002); **Commonwealth v. Hill**, 736 A.2d 578, 592 (Pa. 1999) (reasonable effort includes such actions as Commonwealth listing case for trial prior to run date to ensure defendant brought to trial within time prescribed by Rule 600).

August 18, 2022 to August 29, 2023[13] amounts to a total of 376 days of excludable time. As Dougan does not present any arguments that any other

_____

[13] Dougan also challenged the period between August 29, 2023 to November 2, 2023. However, we conclude that period was attributable to judicial delay. No other motions were filed during that time, and the court unilaterally continued the case on August 29, 2023 to "further consider the Commonwealth's sealed exhibit." Order, 8/29/23. Additionally, the trial court ordered an additional hearing on both Dougan's and the Commonwealth's motions regarding the cell phone data evidence upon the completion of its in-camera review. **See** Order, 10/23/23. The trial court found the Commonwealth demonstrated due diligence during this time, **see** Trial Court Opinion, 8/19/24, at 4, and we are unable to discern any record evidence to
*(Footnote Continued Next Page)*

periods of delay should be attributable to the Commonwealth and we conclude

that the above-mentioned delays bring the trial date within the adjusted run

date, we do not review any additional delays.[14]  Accordingly, we conclude the

trial court did not abuse its discretion in denying Dougan's Rule 600 motion

when his trial commenced prior to that date.  ***See Dunmore***, ***supra***.

_____

the contrary.  ***See Commonwealth v. Goldman***, 70 A.3d 874, 879 (Pa. Super. 2013) ("Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence."); ***see also Commonwealth v. Nellom***, 565 A.2d 770, 773 (Pa. Super. 1989) (noting when case scheduled for earliest possible date consistent with court's business, delay from scheduling not chargeable to Commonwealth).  Therefore, these delays were excludable time in an amount of 66 days.  Nonetheless, even if this period could be contributed to the Commonwealth, it would not garner Dougan relief, as 66 days would not result in delay exceeding the 365-day run date.

[14] Prior to oral argument on December 9, 2025, Dougan filed a reply brief on November 26, 2025, without leave of this Court and nearly six months after the Commonwealth filed its appellee's brief on May 30, 2025.  The Commonwealth filed a motion to strike Dougan's reply brief on November 28, 2025, arguing that Dougan's reply brief was untimely.  ***See*** Commonwealth's Motion to Strike, 11/28/25.

"A party may serve and file a reply brief permitted by these rules within 14 days after service of the preceding brief but, except for good cause shown, a reply brief must be served and filed so as to be received at least three days before argument."  Pa.R.A.P. 2185(a).  While Dougan's reply brief was filed at least three days before argument, it was not filed within 14 days after service of the Commonwealth's brief.  Therefore, Dougan's reply brief was untimely and he has provided no explanation for why he filed it months after receiving the Commonwealth's brief.  Accordingly, we grant the Commonwealth's motion to strike, and we do not consider Dougan's reply brief in reaching our decision.  ***See Commonwealth v. Ibrahim***, 127 A.3d 819, 825 n.3 (Pa. Super. 2015) (declining to consider Commonwealth's reply brief filed seven days late without explanation aside from "boilerplate allegations").

In his second issue, Dougan asserts that the trial court erred by refusing to compel officials from PCCF to return his legal materials and work product, a due process violation. Specifically, Dougan claims his due process rights were violated when the PCCF staff seized and refused to return, or returned with missing materials, nine USB flash drives from him that contained over "eight hundred pages of legal notes, research[,] and other work product" for his *pro se* defense. Appellant's Brief, at 16. Dougan argues that the absence of these documents "gutted" his defense and he was unable to effectively represent himself. *Id.* at 17-18.

The trial court discussed Dougan's claim regarding his access to his legal materials and discovery as follows:

> On March 3, 2022, [Dougan] filed an Emergency Motion to Compel (Pro Se Accommodations) ([]Emergency Motion[]), averring his right to self[-]representation was being hampered by the policies at [PCCF], including but not limited to the confiscation of "legal materials" stored on various flash drives, and limitations on access to his other "legal materials." A hearing on the Emergency Motion and others [was] held on March 24, 2022.[15] On December 7, 2022, [Dougan] filed a Renewed Request for Immediate Action ([]Renewed Request[]), averring that the issues raised in the Emergency Motion were not addressed by the trial court. On December 1[5], 2022, the trial court issued an [o]rder denying [Dougan]'s Emergency Motion and Renewed Request, based on the general nature of [Dougan]'s allegations against PCCF and reluctance to interfere with the policies and protocols instituted by PCCF. []
>
> On January 3, 2023, [Dougan] filed a Request for Reconsideration of Return of Defendant's Legal Materials/*Pro Se* Work Product ([]Request for Reconsideration[]) and a [h]earing was scheduled for March 30, 2023. On November 2, 2023, the trial count issued

---

[15] The certified record does not contain a transcript of this hearing.

an [o]rder addressing the items from the March 30, 2023 hearing. On January 18, 2024, [Dougan] filed a Renewed Motion for Return of Defendant's Legal Materials/*Pro Se* Work Product [(Renewed Motion)], repeating allegations similar to those submitted in his Emergency Motion and Request for Reconsideration. On January 22, 2024, the trial court issued an [o]rder summarily denying the Renewed Motion[.]

After trial, on February 14, 2024, Dougan filed a notice of intent to serve a subpoena to produce documents and things pursuant to Rule 4009.21. On February 20, 2024, the Commonwealth filed objections, specifically that the subpoena proposed by Dougan was purportedly issued pursuant to the Pennsylvania Rules of Civil Procedure, not criminal procedure, governing discovery matters. On April 24, 2024, [Dougan] filed a Motion to Compel Appearance of Witnesses, Documents, and Things ([]Motion to Compel[]) regarding the subpoenas issued on April 3, 2024. On May 2, 2024, the Commonwealth filed a Motion to Quash the April 3[, 2024] subpoenas ([]Motion to Quash[]).

Trial Court Opinion, 8/19/24, at 8-10. Specifically, in denying Dougan's

motions to compel PCCF to return his property, the trial court reasoned that:

[Dougan] has not presented any specific, credible evidence of such allegations. [Dougan]'s allegations are general in nature and touch upon, *inter alia*, the propriety of the [PCCF]'s internal policies regarding the storage of inmate documentation and protocols for inmates reviewing and/or possessing discovery materials. For various sound reasons, this [c]ourt will not interfere with or analyze [PCCF]'s policies and protocols regarding storage of and permissible access to such documents and materials.

[PCCF] is directed[,] nevertheless[,] to notify this [c]ourt immediately if there is any question or concern regarding [Dougan]'s entitlement to view and/or possess discovery documents and materials. [PCCF] is also directed to notify this [c]ourt immediately if there is any known or suspected alteration or deletion of [Dougan]'s discovery documents and materials or any withholding of such documents and materials [that are] otherwise permitted by [PCCF]'s rules and regulations[.]

Order, 12/19/22, at 1-2 (unpaginated); *see also* Order, 12/29/22, at 2 (unpaginated) (denying motion because of Dougan's failure to present any credible evidence of PCCF's negligent or intentional interference or seizure of his legal paperwork); *see also* Trial Court Opinion, 8/19/24, at 10 (incorporating reasoning of previous trial court orders regarding same issue).

Both the Fourteenth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution provide a criminal defendant with due process of law. *See Commonwealth v. Turner*, 80 A.3d 754, 763 (Pa. 2013) (stating two constitutional provisions are coextensive). "While not capable of an exact definition, the basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Id.* at 764. Due process is "flexible and calls for such procedural protections as the particular situation demands." *Commonwealth v. McClelland*, 165 A.3d 19, 29 (Pa. Super. 2017) (citation omitted).

Upon review, we do not discern a violation of Dougan's due process rights. The trial court considered all of Dougan's motions regarding the return of his property, provided Dougan with opportunities to be heard regarding the actions of the PCCF, and rendered a decision on the motion based on the facts presented at the hearings and in the motions. In fact, the attached exhibits to his various motions regarding this claim reveal statements by the PCCF that the USB flash drives were, in fact, returned to him. *See* Emergency Motion, 3/3/22, at Exhibit F (Level II PCCF Inmate Grievance Form, 2/13/22); *id.* at

Exhibit G-H (PCCF inmate request forms). While Dougan asserts that he had exculpatory evidence among his seized property that was not returned, at no point has he presented credible evidence to the trial court or to this Court that this evidence had been either compromised or destroyed while in the PCCF's possession. Furthermore, we agree with the trial court that Dougan did not specify how subpoenaing the PCCF after trial was relevant to his sentencing.[16] Absent any additional evidence, Dugan fails to show how the trial court abused its decision in denying his motion to compel. Therefore, Dougan's due process claim warrants no relief.[17]

Judgment of sentence affirmed. Commonwealth's Motion to Strike granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/28/2026

---

[16] We also note that Dougan filed his subpoena pursuant to Pa.R.C.P. 4009.21, rather than the correct rule of criminal procedure, Pa.R.Crim.P. 107. **See** Pa.R.Civ.P. 4009.21 (subpoena upon person not party for production of documents and things); **cf.** Pa.R.Crim.P. 107 (contents of subpoena for criminal case).

[17] Finally, we note that, to the extent Dougan directly challenges the PCCF's action in taking away his "legal work," Dougan's remedy is not by filing a direct appeal of his judgment of sentence, but rather through a civil action against the appropriate correctional authorities.